UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DIA GOWENS**, | 2:21-CV-12222-TGB-EAS |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| **CREDIT CONTROL, LLC,** | |
| Defendant. | |

Plaintiff Dia Gowens received four letters from Defendant Credit Control, LLC attempting to collect two different debts. As to each of the two debts, Credit Control sent Plaintiff a first letter and then a second letter about six months later. While almost all the information pertaining to the debt on each pair of sequential letters was identical—such as the amount of the debt, the name of the current creditor and original creditor, and the original creditor's account number—the field labeled "Our Acct.#" had a different number on each letter, even when the letters referred to the same debt. Plaintiff alleges that this confused her and led her to believe Defendant was trying to collect the debts more than once. She filed this Amended Complaint to bring a class action alleging that

1

Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and the Michigan Regulation of Collection Practices Act, MCL § 445.252. ECF No. 14. Defendant filed a Motion to Dismiss all claims. For the reasons that follow, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Dia Gowens resides in Ingham County, Michigan. Defendant Credit Control, LLC is a Missouri corporation with a registered agent in Michigan and is alleged to be a "debt collector" per the FDCPA. Plaintiff was first contacted by Defendant in June 2020, when she received a letter which stated a debt amount that she allegedly owed and options for paying it off. She received a total of four letters from Defendant over a period of about seven months. The four letters appear to concern two distinct debts. Following is a summary of the letters Gowens received, in chronological order:

> **Letter 1**: Mailed on June 30, 2020. Collecting $3,976.81 WebBank debt. "Our Acct.#" is 28321571. ECF No. 15-3.
>
> **Letter 2**: Mailed on July 31, 2020. Collecting $1,899.54 WebBank debt. "Our Acct.#" is 28544630. ECF No. 15-1.
>
> **Letter 3**: Mailed on November 24, 2020. Collecting $3,976.81 WebBank debt. "Our Acct.#" is 29405850. ECF No. 15-4.
>
> **Letter 4**: Mailed on February 1, 2021. Collecting $1,899.54 WebBank debt. "Our Acct.#" is 29852730. ECF No. 15-2.

Each of the letters lists the date of mailing and a variety of identifiers regarding the debt, including the "Current Creditor," "Original Creditor," "Our Acct.#," "Orig. Acct.#," and "Amount Due," as well as a list of "Savings Options" describing how the debt could be paid off, "Payment Instructions," and "Disclosures." Letters 1 and 3 are identical except for the date mailed and "Our Acct.#" fields; the same is true for Letters 2 and 4. After receiving Letter 1, Plaintiff attempted to dispute the debt on July 9, 2020 by writing to Defendant and asking for proof of the debt. Pl.'s Ex. F, ECF No. 14-7. After receiving Letter 2, she attempted to dispute that debt in the same manner, writing to Defendant on August 26, 2020. Pl.'s Ex. G, ECF No. 14-8. She alleges Defendant never responded to either attempt to dispute, and instead sent Letters 3 and 4. ¶ 47, ECF No. 14.

Plaintiff alleges these letters, sent with different "our account" numbers even though they refer to the same debts, are a part of Defendant's business practice and were intended to "confuse and frustrate consumers so they cannot determine which account balance to pay down." *Id.* at ¶ 49. She alleges that these letters "oppress and abuse" consumers, who might "believe that Defendant was attempting to collect the same Debt twice." *Id.* at ¶ 51.

She now brings this lawsuit on behalf of consumers in Michigan who were sent two or more form letters by Defendant referencing the same debt but using different account numbers, just as she was. *Id.* at ¶

3

58. This action was originally filed in state court, and timely removed by Defendant on September 21, 2021. Defendant filed a Motion to Dismiss (ECF No. 12), in response to which Plaintiff filed the operative Amended Complaint (ECF No. 14). Defendant's renewed Motion to Dismiss (ECF No. 15) is now fully briefed, and the Court has indicated it will be resolved without oral argument. ECF No. 16.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff

4

must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" that do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

### III. ANALYSIS

To make out a claim under the FDCPA, a plaintiff must show that "(1) it is a "consumer" as defined by the FDCPA, (2) the "debt" arose "out of transactions which are 'primarily for personal, family or household purposes[,]' " (3) the defendant is a "debt collector" as defined by the FDCPA, and (4) the defendant violated the prohibitions set forth in [the FDCPA]." *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015) (quoting *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)). Plaintiff sufficiently alleges elements (1) through (3) in the complaint, and Defendant does not appear to challenge these elements. Instead, it disputes that Plaintiff can successfully allege any violations of the statute. Defendant makes three different legal arguments to attempt to dismiss all six of Plaintiff's claims (four under the FDCPA, and two under the MCPA), and the Court will address each in turn.

### A. Whether the letters would mislead the "least sophisticated consumer" and were "materially false"

Plaintiff makes two specific claims under 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." She states that Defendant made a "false representation of the character, amount, or legal status" of her debts in violation of § 1692e(2)(A), and used a "false representation or deceptive means to collect or attempt to collect any debt" in violation of § 1692e(10). Defendant argues that the letters do not meet the standard for misleading representations as interpreted by courts, and that therefore these claims fail.[1]

Whether a debt collector's actions are "false, deceptive, or misleading" under § 1692e depends on whether the "least sophisticated consumer" would be misled, an objective standard. *Wallace,* 683 F.3d at 326 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). This standard is broadly protective, allowing claims by both the "naïve" and "gullible": only "bizarre or idiosyncratic interpretations" of debt collection notices should be dismissed for failure to state a claim. *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). The "least sophisticated consumer" test asks "whether there is a reasonable

---

[1] Parties agree that the analysis regarding these claims is identical to the analysis under MCL 445.252(e), and therefore the Court's conclusions as to these FDCPA claims will apply to the claim under MCL 445.252(e) as well. ECF No. 17, PageID.203; ECF No. 18, PageID.226.

likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011).

The Sixth Circuit has offered another way of evaluating liability under 1692e: asking whether the statement in question is "materially false or misleading." *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009). The first court to articulate this "materiality" requirement noted that the FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Therefore, another way of determining whether statements are false or misleading such that they violate § 1692e is to ask if they are "mere technical falsehoods that mislead no one" or "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).

Here, under either analysis, Plaintiff has sufficiently alleged that the letters were deceptive and misleading enough to make out violations of 1692e(2)(A) and (10). She received two sets of letters that were almost identical, but that used different account numbers, attempting to collect debts. Notably, Plaintiff received the second set of letters *after*

7

attempting to dispute the debts but receiving no response to that request. A reasonable consumer who takes the time to dispute a debt has the right to expect that the collection agency will abide by the "important disclosures" that it includes in the debt notice. In these disclosures, each letter stated that if the debtor disputes the validity of the debt within 30 days, "this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office." *See, e.g.*, ECF No. 15-1, Page ID.172.

Having disputed the debt, even an individual who carefully read the letters, and realized that they were referring to the same debts, could reasonably be confused as to the consequence or implication of the two different account numbers and find the letters misleading. Why is a second notice arriving instead of a verification of the debt? Is the debt going to be collected twice? If I make a payment that references one account number, will the other account automatically be closed? These are not "bizarre" or "idiosyncratic" questions, particularly given that Plaintiff attempted to contact Defendant, disputed the debt, and the "response" offered no new information *except* the new account number.

The use of two different account numbers is also misleading in a material way. It introduces confusion regarding the "identity" of the debt and what steps the consumer must take to ensure it is paid off. In its briefing, Defendant offers a perfectly plausible explanation as to why there are different account numbers, followed by an argument about how

it makes no material difference because the numbers merely represent internal recordkeeping. ECF No. 15, PageID.157 n.1. But *Defendant's* take on the materiality of these numbers is irrelevant. What matters is the perspective of the recipient consumer: whether Plaintiff has sufficiently alleged a materially misleading difference in the letters from *her* point of view. She has. Our consumer landscape is full of numbers to keep track of: order numbers, serial numbers, temporary access codes, VIN numbers, account numbers. These are generally unique identifiers that pinpoint a particular object or transaction and its relationship to an individual consumer. Without any clarifying explanation as to a particular number's purpose, why would a consumer assume that a different "our account" number has no meaningful significance? The facts as alleged by Plaintiff indicate that the account numbers presented to her in the communications from Defendant were materially misleading.

Defendant argues that even an unsophisticated consumer would clearly recognize the letters are referring to the same debts, brushing aside the difference in account number as irrelevant. But absent more specific explanation[2] from the debt collector in writing, the unsophisticated consumer has no way of knowing what is or is not relevant on a written collection notice. Consumers are dependent on

---

[2] For example, if the letters referenced previous communications or explicitly stated "This letter refers to the same debt as the letter mailed to you on X date and said debt can be resolved with a payment that references either account number."

9

clear, unambiguous communication from debt collectors, and this is also what the FDCPA requires. The Motion to Dismiss as to Count I's claims under § 1692e(2)(A) and § 1692e(10), and Count II's claim under MCL 445.252(e), is denied.

### B. Whether the letters were intended to "harass, oppress, or abuse"

Section 1692d prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Without limiting the general application of the above proscription, 15 U.S.C. § 1692d(1)-(6) offers specific examples of conduct that "is a violation of this section." Defendant argues that Plaintiff cannot show that its actions were sufficient to "harass, oppress, or abuse any person in connection with the collection of a debt," as would be required to make out a violation.[3] Defendant points out that the letters did not contain any of the kinds of abusive language specifically prohibited by § 1692d(1)-(6), including threats of violence or criminal means to harm reputation, obscene, profane, or otherwise abusive language, publishing non-paying debtors' names, or harassing telephone contact.

---

[3] Parties agree that the analysis regarding this claim is identical to the analysis under MCL 445.252(n), and therefore the Court's conclusions as to these FDCPA claims will apply to the claim under MCL 445.252(n) as well. ECF No. 17, PageID.214; ECF No. 18, PageID.226.

But according to the statutory text, it is not necessary that a debt collector's conduct fall within one of the enumerated prohibitions if it nevertheless engaged in "any conduct the natural consequence of which is to harass, oppress, or abuse." Section 1692d is a catch-all provision of the FDCPA, and the Sixth Circuit has indicated that the broad language in this provision should be understood as prohibiting debt collectors from engaging in conduct "intended to embarrass, upset, or frighten a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). At least one other Court in this district has found that letters attempting to collect a debt that contain some misrepresentation or confusing content can be the basis of a claim under this Section. *See McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 372 (E.D. Mich. 2011) (denying defendant's motion for summary judgment on 1692d claim when it sent seven letters to plaintiff attempting to collect a debt from the wrong party).

Although it is a close call, at this stage, taking Plaintiff's allegations as true and construing the Complaint in the light most favorable to her, she states that the letters she received created "severe confusion and frustration" as to how she should pay off the debt, and whether the debt was in fact being collected twice. ¶¶ 51, 54, ECF No. 14. This is plausibly upsetting to a consumer and is sufficient to state a claim. The Motion to Dismiss as to Count I's claims under § 1692d and Count II's claim under MCL 445.252(n) is denied.

### C. Whether the letters attempt to collect an unauthorized debt

Defendant's last argument is that Plaintiff cannot make out a claim under 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means" to collect or attempt to collect any debt. Specific debt collection practices are listed as violations constituting unfair or unconscionable means. Her claim references § 1692f(1), which prohibits "[t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Plaintiff claims that each set of two letters, because it referenced the same debt twice, constituted an attempt to collect more than the amount of debt that was actually authorized. Defendant maintains that the letters each stated the correct and undisputed amount of the debt and no more. Consequently, Defendant contends, the letters were not attempting to collect any more than the amount of the debt that was authorized.

A plain reading of the face of the letters in question supports Defendant's position: the amount of the debt to be collected is the amount it was authorized to collect. Plaintiff's claim is more a concern that she may have *thought* that the letters were attempting to collect the same debt more than once, which is the gravamen of the § 1692e claim discussed *supra*. But that confusion is not borne out by the face of the notices, each of which only stated that the amount due was the amount

authorized. Defendant cannot therefore be in violation of this provision because it was "expressly authorized" to collect the debts as stated. ECF No. 15, PageID.168.

Importantly, Plaintiff's allegation as related to this claim is that the letters "*would be understood by the least sophisticated consumer* as an attempt to collect the same debt twice." ¶ 53, ECF No. 14 (emphasis added). Plaintiff certainly alleges that the letters as written could cause a consumer to be worried about double collection. And the statute would indeed prohibit Defendant from collecting the debt twice, as such a duplicate collection would be for an amount not "expressly authorized" by the debt agreement or the law. But the Complaint is devoid of facts that the Defendant intended to convey a request to receive more than the authorized amount of the debt. To make a plausible claim under a statute like § 1692f, focused on prohibiting "unfair or unconscionable" conduct, a Plaintiff making a claim under subsection (1) would need to include some facts indicating purposeful activity aimed at collecting more than the authorized debt, not merely a possibility that a debtor might interpret an ambiguous notation that way. Here, Plaintiff does not make any plausible allegations that Defendant was, in fact, attempting to collect the debt twice. The Motion to Dismiss as to Count I's claims under § 1692f(1) is therefore granted.

## CONCLUSION

Defendant's Motion to Dismiss is **GRANTED** as to any claims under 15 U.S.C. § 1692f(1) and otherwise **DENIED.**

**IT IS SO ORDERED**, this 28th day of June, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge